669 S.E.2d 647

**SOUTH CAROLINA DEPARTMENT OF
SOCIAL SERVICES, Respondent,**

v.

**LISA C., Frank C., Frank C., Sr., and Linda C.,**

**In the Interest of Minor Child I and Minor Child II,**

**of whom Frank C. is Appellant.**

No. 4453.

Court of Appeals of South Carolina.

Heard Sept. 16, 2008.
Decided Oct. 30, 2008.

408

D. Bradley Jordan, of Rock Hill; and John D. Elliott, of Columbia, for Appellant.

David Simpson, of York, for Respondent.

KONDUROS, J.:

Father appeals the family court's admission of various hearsay statements of Child during a Department of Social Services (DSS) intervention case. We reverse and remand for a new trial.[1]

## FACTS

Mother and Father are parents of twin girls born in 1999. DSS filed an intervention action in 2006 pursuant to section 20-7-738 of the South Carolina Code contending Father posed a threat of abuse or neglect to Children. However, the trial focused primarily on allegations of sexual abuse by Father as to one Child. Mother and Father had been living separate and apart for approximately three years at the time of trial.

Child testified at trial, but did not reveal any sexual abuse by Father at that time. Father elected not to cross-examine Child. Dr. Deborah Reyes testified on behalf of DSS. Dr. Reyes testified she was the Director of Clinical Services for the Dickerson Center for Children, a non-profit child advocacy center. Her qualifications included a Master's degree and Ph.D. in clinical psychology as well as numerous courses in forensic interviewing. She became licensed by the state of South Carolina the Friday prior to the trial of this case. Dr. Reyes testified she conducted a forensic interview with Child

---

1. Before we begin our analysis, we emphasize this case involves the interpretation of a very specific statute dealing with the introduction of a child's hearsay statements in the context of a DSS intervention action. Any conclusions should be strictly ascribed to the application of this statute and should not be extrapolated with respect to the admission or exclusion of hearsay statements in the criminal context.

after another Dickerson Center staff person reported a "problematic non-disclosure." [2]

Dr. Reyes testified Child made the following disclosures in response to questioning:

At this point, I asked her if anyone had touched her private. She said yes. When I asked her to tell me about that, she said, "My daddy." I asked her what did her daddy do and then she said ... "that he put a card on there from the cow place [3] and that daddy use to bite us on the butt."

Dr. Reyes further testified Child told her Father had touched her with the card "on the inside and that it felt bad on her private part." Finally, Dr. Reyes indicated Child said Father had touched her "hinny" many times, and "Daddy put a car inside."

Father objected to Dr. Reyes' testifying about Child's hearsay statements during the interview. However, the family court allowed the statements relying on section 19–1–180 of the South Carolina Code, which makes hearsay statements by children in abuse and neglect cases admissible under certain circumstances.

Mother also testified concerning a prior hearsay statement by Child regarding alleged sexual abuse. Mother stated Child told her Father "had put his mouth on her private." Father objected to the admission of this testimony, but the family court determined section 19–1–180(G) did not prohibit the admission of such testimony as long as the hearsay statement was made prior to Mother and Father's separation.

Detective Cathryn Bell of the Chester County Sheriff's Office testified Child told her "Daddy rolled up a cow place card, and he put it in my hoochie." Detective Bell understood Child's reference to "hoochie" to mean Child's vaginal area. Detective Bell further testified, over Father's objection, there was probable cause to leave the criminal case against Father open.

---

2. Dr. Reyes described a problematic non-disclosure as an interview in which a child may deny improper touching, but there are problems with the way the child answers the questions.

3. Testimony revealed Child referred to the restaurant Chick–Fil–A as the cow place.

Dr. Patricia Tonkawitz, Child's pediatrician, conducted a physical exam of Child, which yielded normal findings. Over Father's objection, Dr. Tonkawitz also testified about a portion of her report in which she indicated Mother's history regarding Child was "convincing."

The family court determined Children faced a threat of harm of sexual abuse from Father and ordered visitation between Father and Children be supervised by Father's parents. Furthermore, the court ordered Father to attend parenting classes and undergo mental health and sexual predator evaluations. The case was set for further review in three months. This appeal followed.

## STANDARD OF REVIEW

 "In appeals from the family court, the appellate court has the authority to correct errors of law and to find facts in accordance with its own view of the preponderance of the evidence. However, this broad scope of review does not require this court to disregard the family court's findings." *Mr. T v. Ms. T,* 378 S.C. 127, 131–32, 662 S.E.2d 413, 415 (Ct.App.2008) (citations omitted), *cert. pending.* "The admission or exclusion of evidence is left to the sound discretion of the trial court, and the court's decision will not be reversed absent an abuse of discretion." *State v. Morris,* 376 S.C. 189, 205, 656 S.E.2d 359, 368 (2008). The trial court abuses its discretion when that decision is based upon an error of law or upon factual findings that are without evidentiary support. *Id.* at 206, 656 S.E.2d at 368.

## LAW/ANALYSIS[4]

This appeal concerns the admission of testimonial evidence involving both matters of law and matters that were within the discretion of the family court judge. The controlling statute at issue is section 19–1–180 of the South Carolina Code (Supp.2007). The statute considers how the court will address otherwise inadmissible out-of-court statements by children

---

4. Father raises issues that apply to the testimony of several different witnesses. For the sake of organization we will address each witness' testimony in turn and each argument related thereto.

under twelve in a family court proceeding regarding allegations of abuse and neglect.

> An out-of-court statement may be admitted ... if:
>
>> (1) the child testifies at the proceeding or testifies by means of videotaped deposition or closed-circuit television, and at the time of the testimony the child is subject to cross-examination about the statement or:
>>
>> (2)(a) the child is found by the court to be unavailable to testify on any of these grounds:
>>
>> (i) the child's death;
>>
>> (ii) the child's physical or mental disability;
>>
>> (iii) the existence of a privilege involving the child;
>>
>> (iv) the child's incompetency, including the child's inability to communicate about the offense because of fear;
>>
>> (v) substantial likelihood that the child would suffer severe emotional trauma from testifying at the proceeding or by means of videotaped deposition or closed-circuit television; and
>>
>> (b) the child's out-of-court statement is shown to possess particularized guarantees of trustworthiness.

§ 19–1–180(B). The statute also attempts to protect against the admission of a child's accusations that could be motivated by the malice of one parent for the other.

> If the parents of the child are separated or divorced, the hearsay statement shall be inadmissible if (1) one of the parents is the alleged perpetrator of the alleged abuse or neglect and (2) the allegation was made after the parties separated or divorced. Notwithstanding this subsection, a statement alleging abuse or neglect made by a child to a law enforcement official, an officer of the court, a licensed family counselor or therapist, a physician or other health care provider, a teacher, a school counselor, a Department of Social Services staff member, or to a child care worker in a regulated child care facility is admissible under this section.

§ 19–1–180(G).

## I. Objections to Testimony

### A. Dr. Reyes' Testimony

■ Father contends Dr. Reyes' testimony regarding Child's statements was not admissible under this statute,

because Child's testimony was not found to be trustworthy by the family court. We disagree. The admission of Dr. Reyes' testimony appears to be proper under section 19–1–180(B)(1). Child testified at trial and was subject to cross-examination. Therefore, pursuant to section 19–1–180(B)(1), there was no requirement Child be found unavailable or the family court conduct an analysis of the trustworthiness of those statements. *See Charleston County Dep't of Soc. Servs. v. Father, Step-mother & Mother*, 317 S.C. 283, 289, 454 S.E.2d 307, 310 (1995) (approving admission of child's hearsay statements in absence of trustworthiness analysis when child testified at trial).

Father further argues if Dr. Reyes' testimony regarding Child's statements was admissible under part (B) of the statute, it was excluded under part (G) of the statute because she was not a licensed family counselor or therapist at the time she interviewed Child. We agree. The family court considered this argument and determined Dr. Reyes fell with the ambit of persons covered by the statute as either a health care provider or a therapist. Furthermore, the family court relied upon Dr. Reyes' experience and qualifications and her subsequent licensure to establish the credibility and reliability of her testimony.

"The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). Here, the family court concluded the term therapist was not necessarily modified by licensed in the statute. We disagree with this finding. The intent of the overall statute is to aid in the protection of children from abuse and neglect by permitting the introduction of their hearsay statements. However, the purpose of part (G) is to protect a parent from potentially false accusations instigated by the other parent as part of a contentious divorce or custody battle. To conclude the legislature intended the testimony of unlicensed therapists to be admitted is inconsistent with the intent to limit the admission of hearsay statements.

Additionally, finding Dr. Reyes fell within the category of healthcare providers is again inconsistent with the statute. The legislature placed a licensure requirement on mental health professionals that cannot be disregarded by categoriz-

ing Dr. Reyes as both a therapist and a healthcare provider. While mental health is undoubtedly part of a child's overall well-being, the legislature separated the groups in the statute thereby making a distinction between the groups that we cannot ignore.

Even though we disagree with the family court's analysis of this issue, we may still affirm the admission of Child's statements through Dr. Reyes if there is another basis in the record for doing so. *See* Rule 220(c), SCACR. At trial, DSS also contended Dr. Reyes' testimony was admissible because she was licensed at the time of trial. We disagree.

■ If a statute's language is plain, unambiguous, and conveys a clear and definite meaning, rules of statutory interpretation are not necessary, and the court has no right to look for or impose another meaning. *Hodges,* 341 S.C. at 85, 533 S.E.2d at 581. In this case, part (G) makes admissible hearsay statements *"made by a child to ... a licensed family counselor or therapist."* (emphasis added). The plain language of the statute indicates licensure is required at the time the statement by the child is made. The record is clear Dr. Reyes was not licensed at the time she interviewed Child, although she was undergoing the licensing process. Consequently, Child's hearsay statements to Dr. Reyes were inadmissible.

■ Finally, Father contends Dr. Reyes improperly commented on Child's credibility by saying Child "had no apparent motivation ... to have a false allegation," and Child gave a "consistent disclosure." For a psychologist to comment on the veracity of a child's accusations of sexual abuse is improper. *State v. Dawkins,* 297 S.C. 386, 393–94, 377 S.E.2d 298, 302 (1989) (finding therapist indicating he believed victim's allegations were genuine was improper); *see also State v. Dempsey,* 340 S.C. 565, 571, 532 S.E.2d 306, 309 (Ct.App.2000) (finding therapist's testimony children were being truthful in ninety-five percent of instances in which sexual abuse was alleged was improper vouching for child).

In the instant case, Father made no contemporaneous objection when Dr. Reyes testified Child had no reason to make a false allegation and Child did not appear to have been coached. Consequently, any error regarding those specific

comments as to truthfulness is not preserved. *See State v. Hoffman,* 312 S.C. 386, 393, 440 S.E.2d 869, 873 (1994) (holding a contemporaneous objection is required to preserve an issue for appellate review).

However, Father did object to Dr. Reyes' testifying Child gave a "consistent disclosure about her putting a card in her vaginal area bitting [sic] her butt and putting a car in her rectum." In the recent case of *State v. Douglas,* 367 S.C. 498, 505, 626 S.E.2d 59, 63 (2006) *cert. granted,* June 7, 2007, a witness, Herod, qualified as an expert in forensic interviewing of sexual assault victims, testified that after interviewing a child she recommended a medical exam. Douglas argued this testimony improperly bolstered the State's case as it would lead a jury to believe the expert considered child's accusations truthful. This court concluded: "Although the jury could infer Herod thought the victim told her the truth about being molested, ... Herod did not express her opinion as to whether or not the victim told her the truth during the interview." *Id.* at 522, 626 S.E.2d at 72. Consequently, Herod's testimony did not improperly comment on the child's credibility.

In contrast, in this case, Dr. Reyes indicated Child gave a consistent disclosure and that as a result of that conclusion she recommended therapy. Dr. Reyes' testimony seems fill the inferential gap that made Herod's testimony in *Douglas* admissible. There is little doubt Dr. Reyes found Child's testimony to be credible, and testimony to that effect is inadmissible.[5]

## B. Mother's Testimony

Father contends the family court erred in allowing Mother to testify regarding Child's accusations against Father. The family court concluded part (G) of the statute did not prohibit the introduction of such statements because Child made them to Mother prior to Mother and Father's separation. Part (G) states the "hearsay statement shall be inadmissible if (1) one of the parents is the alleged perpetrator of the

---

5. We note Dr. Reyes was never actually qualified as an expert in either clinical psychology or forensic interviewing although such a motion was made and her experience and education were presented to the family court. Her status as an expert is not raised on appeal.

alleged abuse or neglect and (2) the *allegation* was made after the parties separated or divorced." (emphasis added). Because the statute is considering the hearsay statement by the child, allegation could refer to the statement by Child to Mother. However, allegation could also refer to the repetition of Child's hearsay statement by Mother at the hearing.

If a statute is susceptible to two reasonable interpretations, it is ambiguous. *See Sloan v. S.C. Bd. of Physical Therapy Exam'rs*, 370 S.C. 452, 489, 636 S.E.2d 598, 617 (2006) (Toal, C.J., dissenting). When "a statute is ambiguous, the Court must construe the terms of the statute." *Wade v. Berkeley County*, 348 S.C. 224, 229, 559 S.E.2d 586, 588 (2002). As previously stated, the cardinal rule of statutory construction is to discern and give effect to the intent of the legislature. *Hodges*, 341 S.C. at 85, 533 S.E.2d at 581. "All rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in light of the intended purpose of the statute." *Broadhurst v. City of Myrtle Beach Election Comm'n*, 342 S.C. 373, 380, 537 S.E.2d 543, 546 (2000).

As discussed above, the purpose of part (G) of the statute is to protect a parent from potentially false accusations instigated by the other parent. In this case, to allow Mother to testify after the separation regarding statements made before the separation undermines the purpose of this part. In promoting false allegations, a parent could simply claim allegations were made by the child prior to separation simply to evade the purview of the statute. Part (G) protects against accusations potentially arising from the acrimony of separation; therefore, if the witness is testifying after the separation the danger for false allegations still exists. Consequently, we conclude the admission of Child's hearsay statement to Mother was error.

## C. Detective Bell's Testimony

Father contends the family court erred in allowing Detective Bell to testify regarding Child's hearsay statements. We disagree. As discussed with regard to Dr. Reyes' testimony, Child was available to testify so that Child's hearsay

statements were admissible under (B)(1). There is no argument that Detective Bell's testimony should have been excluded under part (G) as she clearly falls with the category of law enforcement official.

Father also appeals the admission of Detective Bell's testimony that the Sheriff's Department had "probable cause" to keep open its criminal investigation of Father. Father's objection at trial and on appeal is based on relevance. Rule 401 of the South Carolina Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." In the instant case, Detective Bell's opinion the criminal case should remain open does not make any specific fact of consequence more or less probable.

Furthermore, even if Detective Bell's opinion was relevant, all relevant evidence is not admissible. "[T]he dictates of Rule 401 are subject to the balancing requirement of Rule 403, SCRE, which requires a court to exclude relevant evidence upon a showing that its admission would be more prejudicial than probative." *Jamison v. Ford Motor Co.*, 373 S.C. 248, 269, 644 S.E.2d 755, 766 (Ct.App.2007) (quoting *Watson ex rel. Watson v. Chapman*, 343 S.C. 471, 478, 540 S.E.2d 484, 487 (Ct.App.2000)); *see also* Rule 403, SCRE ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.").

In the present case, nothing indicates the family court conducted a prejudicial versus probative analysis. Evidence is unfairly prejudicial in the context of Rule 403, if the evidence has an undue tendency to suggest a decision on an improper basis, such as an emotional one. *State v. Saltz*, 346 S.C. 114, 127, 551 S.E.2d 240, 247 (2001). In this case, Detective Bell's testimony suggests Father is guilty of sexual misconduct against Child and is highly prejudicial. For the fact-finder to make a determination based on the Detective's opinion of guilt would be improper. Therefore, we conclude the admission of this evidence was error.

### D. Dr. Tonkawitz's Testimony

 Father also claims the family court erred in admitting pediatrician Dr. Tonkawitz's testimony the history provided by Mother when Child was brought for examination was "convincing." We agree. As previously discussed, an expert is not to comment on the veracity of another witness's statements. *Dawkins*, 297 S.C. at 393–94, 377 S.E.2d at 302; *Dempsey*, 340 S.C. at 571, 532 S.E.2d at 309. Tonkawitz should not have been allowed to give her opinion as to Mother's truthfulness regarding Child's medical history. Such observation is reserved for the trier of fact, in this case, the family court. *See S.C. Dep't of Soc. Servs. v. Forrester*, 282 S.C. 512, 516, 320 S.E.2d 39, 42 (Ct.App.1984) ("The credibility of testimony is a matter for the finder of fact to judge.").

### II. Shifting of Burden of Proof

 Father contends the family court shifted the burden of proof, requiring him to prove his innocence. In a DSS intervention case, DSS has the burden of proof by the preponderance of the evidence. *Aiken County Dep't of Soc. Servs. v. Wilcox*, 304 S.C. 90, 93, 403 S.E.2d 142, 143 (1991). The family court's order addresses the defense put forth by Father including the negative psychological testing for pedophilic tendencies and Child's negative physical examination. The family court concluded this evidence could not rule out the possibility of sexual abuse. This language is somewhat problematic, but viewing the order as a whole, the family court relied upon the evidence presented by DSS in reaching its conclusion. The order enumerates the testimony of the witnesses indicating Child made disclosures of abuse as well as considering Child's demeanor on the witness stand. Furthermore, the order cites to evidence showing Child was acting out sexually and was experiencing nightmares. Overall, it does not appear the family court impermissibly shifted the burden to Father. The order simply addresses all of the evidence put forth before it including Father's and Child's negative test results.

### CONCLUSION

We conclude the admission of Child's hearsay statements through Dr. Reyes was erroneous in light of section 19–1–

180(G). We find comments by Dr. Reyes regarding Child's credibility were likewise inadmissible. Furthermore, Mother's testimony regarding Child's hearsay statements was also inadmissible under section 19–1–180(G). Additionally, comments by Dr. Tonkawitz regarding Mother's credibility were inadmissible. Finally, the admission of Detective Bell's opinion as to probable cause in Father's criminal case was error. The sum of these errors warrants reversal of the family court's order. This case is therefore

**REVERSED AND REMANDED.**

ANDERSON and WILLIAMS, J.J., concur.